## Commonwealth v. One Oldsmobile Automobile.

*Liquor law—Condemnation of automobile—Bailment—Conditional sale— Act of March 27, 1923, P. L. 34.*

1. In a proceeding to condemn an automobile which had been unlawfully used in the transportation of liquor, a claimant cannot assert a title therein as a bailee under a bailment lease where his contract with the person who had unlawfully used the car showed that the latter was a purchaser under a conditional sale agreement.

2. An agreement alleged to be a conditional sale of an automobile will not be so construed where there is nothing in the agreement to show that the car was delivered "in trust" or for a definite purpose, or time at the completion of which it was to be returned to the alleged owner or any other person.

Proceedings to condemn automobile. Q. S. Bradford Co., Sept. Sess., 1925, No. 86.

*D. J. Fanning,* District Attorney, for Commonwealth.

*J. W. Beaman,* for claimant.

CULVER, P. J., Feb. 23, 1926.—This is a proceeding instituted by the district attorney for the condemnation and sale of an Oldsmobile automobile, which was used by one Thornton Maddox in unlawfully transporting intoxicating liquors in the County of Bradford, and was seized by the officers while being so used.

Aug. 7, 1925, the said Thornton Maddox was arrested on a charge of unlawfully transporting intoxicating liquors [in said automobile]; a bill having been prepared against him, he waived the finding of the grand jury and pleaded guilty to the offence charged therein, to wit: "Transporting of intoxicating liquors for beverage purpose within the County of Bradford and State of Pennsylvania." The defendant was sentenced and the sentence was subsequently complied with.

Oct. 5, 1925, the district attorney instituted these proceedings to No. 86, September Sessions, 1925. The automobile in the possession of, and being used by, the defendant in said unlawful transportation of intoxicating liquors for beverage purposes was seized by the officers upon that ground and is now in custody of the district attorney of the county, and is Oldsmobile automobile, manufacturer's No. 7387, motor No. B 10927.

It is, therefore, plain that the Commonwealth has a clear right to a decree of condemnation under the Act of March 27, 1923, P. L. 34, as against the said Thornton Maddox and as against said automobile.

The Merchants Acceptance Corporation presented its petition, alleging, in substance, that the said Thornton Maddox was a bailee of said automobile, and that said Merchants Acceptance Corporation of Elmira, New York, is the owner of the alleged bailment contract, and that a balance of $79.20 remains unpaid thereof; and, further, that the unlawful use of such automobile was without its knowledge or consent, and asking payment of said sum, $79.20, out of the proceeds of the sale of the automobile.

Counsel representing the Merchants Acceptance Corporation and the district attorney have filed of record in court the following agreement, to wit:

"For the purpose of disposing of the questions before the court, on petition of Commonwealth to condemn above named automobile, and the petition of Merchants Acceptance Corporation to be first paid out of the proceeds of sale, after payment of costs, it is stipulated:

"1. The court may find as a fact that on Aug. 7, 1925, the automobile in question was being used by Thornton Maddox for the unlawful transportation

of intoxicating liquors for beverage purposes, in violation of the provisions of the Act of March 27, 1923, P. L. 34.

"2. That such unlawful use of said automobile was without the knowledge or consent of the Merchants Acceptance Corporation."

It is designated in the contract itself as "Conditional Sale Contract," a copy of which is annexed to and made a part of the complainant's petition filed in this case, and is herein referred to and made a part of this opinion, the same as though it was fully copied.

An examination of the said alleged bailment contract, which we hereby hold to be a conditional sale contract, shows the following facts:

"(a) It is a printed form, and is headed in large type 'CONDITIONAL SALE CONTRACT,' and is dated March 25, 1925.

"(b) Thornton Maddox is designated therein 'Purchaser,' and the Albee Motor Company, Incorporated, is designated 'Seller.'

"(c) That the 'Purchaser' hereby acknowledges delivery and acceptance of the following described Motor Vehicle in its present condition, after thorough examination, which 'Purchaser' agrees to 'buy' and 'Seller' agrees to 'sell' on the following terms and conditions.

"(d) The price to be paid was agreed upon as $220.00 for the said automobile, $88.00 paid in cash on delivery, and the balance, $132.00, to be paid, was secured by a note of the same date, payable to the Merchants Acceptance Corporation, with the $132.00 to be payable in ten (10) monthly instalments of $13.20 each, with interest.

"(e) There is a condition in said note that upon failure of making any of the payments, the whole of it becomes due and payable at once, at the election of the holder of the note, and this note was signed by Thornton Maddox and guaranteed by the Albee Motor Company, Incorporated.

"(f) On the back of said contract is the 'Purchaser's Statement,' dated March 25, 1925.

"(g) On the back of said contract is the 'Dealer's Assignment,' by the Albee Motor Company, Incorporated, to Merchants Acceptance Corporation.

"(h) The said contract contains the clauses usually found in conditional sales as to insurance, that the title shall remain in the 'seller' until paid for, and that the 'Purchaser' shall place insurance, and that the 'Purchaser' shall keep the motor-vehicle in good repair at his own expense.

"(i) That the purchaser agrees not to use said motor-vehicle unlawfully or for any illegal purposes."

The whole tenor of this contract shows a sale of the automobile and not a bailment. There is no doubt that this matter was arranged, the agreement made, the conditional sale contract signed, the note and the assignment to the Merchants Acceptance Corporation as one single transaction, and that the sole and only purpose of building up the smoke-screen of paper was to secure the purchase money for said automobile.

We are convinced, after careful examination and consideration of these papers, that the contract in question is a conditional sale and not a bailment contract. There is no language contained in the same which would be applicable to a bailment contract, but, on the contrary, the whole tenor and language of it indicates beyond question a conditional sale.

While this is a New York State contract, the law of New York State on the subject not being shown to differ from the law of Pennsylvania, it is presumed to be the same, and we think, under the decisions of our appellate court, this contract, the note in question, and the entire transaction is purely and simply a conditional sale and not a bailment lease, and that, therefore,

the Merchants Acceptance Corporation has no standing to demand payment of any part of the purchase money from the sale of the automobile in question.

The language of Justice Schaffer in Root v. Republic Acceptance Corp., 279 Pa. 55, 57, is very appropriate to this case: "The complicated dealings between many of those trafficking in and loaning money on automobiles has reached a point where the courts must strip transactions of their pretences and look at them as they really are, with the camouflage of papers giving a similitude of the passing of title removed, or they will be dealing with fictions instead of facts. Those who buy and sell, bail and loan money on motor-vehicles must be given to understand that the realities of their transactions will be sought for by the courts; they will look through the screen of paper titles to ascertain what was the real situation."

In the case of Bank of Secured Savings v. Rudolph et al., 83 Pa. Superior Ct. 439, in interpreting an alleged contract of bailment, which was particularly prepared for use in Pennsylvania, but which was used in connection with other papers in the purchase of an automobile and the payment of the purchase price, which was furnished by the Bank of Secured Savings on said papers, Judge Trexler (page 444) said:

"The substance of the agreement and not its form must determine. We notice in the instant case that there were two papers; the first in all its essentials is a conditional sale; the price of the car is given, the amount, the value of merchandise transferred in part payment is set forth, the 'purchase price' is referred to, and it will be noticed that the 'balance is to be covered by lease,' evidently intending the subsequent transaction to be in effect the securing of the balance of the money by a pledge of the machine under the guise of a lease. This paper and the so-called lease must be construed as one transaction. . . .

"We have already pointed out above the significant details contained in the lease, the reference to the form to be used in connection with 'time sales,' the use of the word 'buyer' and 'seller.' . . . The whole thing on its face is a device to secure the balance of the purchase money by a pledge of the truck. The words employed evincing an intention of making it a bailment do not overcome these facts, which show that this was a sale. What is in the minds of the parties can be sometimes ascertained by the undesigned utterances that are contained in the paper. The reference to the right of the seller to declare the note immediately due and payable when he shall deem the debt 'insecure' is very significant. We think the contract between the parties was one of buyer and seller and not a bailment."

We are satisfied that the contract in the case at bar is a conditional sale contract and not a bailment lease, and that the effect of the contract with the note, assignment, etc., shows clearly that the Oldsmobile in question was sold by the Albee Motor Company, Incorporated, to Thornton Maddox, and that the papers in question were for the exclusive purpose of securing the purchase price therefor, and are ineffective to establish title to the Oldsmobile in the claimant in this case, and that no part of the purchase money therefor can be paid from the proceeds of the sale of the automobile in question.

That the claimant understands the paper in question was not a bailment lease or contract of bailment is evidenced by its certificate attached to the copy of the contract, which is annexed to claimant's petition and which certificate is as follows:

"To whom it may concern: This is to certify that the attached Conditional Sales Contract is an exact copy and all thereof of a contract for the purchase

of a Oldsmobile Touring, entered into between the Merchants Acceptance Corporation and Thornton Maddox—made under date of March 25, 1915.

Signed    Louis C. Andrews.

"State of New York, County of Chemung, ss.:

"On this eleventh day of September, Nineteen hundred and twenty five, personally appeared before me, Louis C. Andrews, known to me personally and who acknowledged that he executed the foregoing statement.

H. W. Van Camp, Notary Public."

Counsel for claimant earnestly contends that the provision, "In the event that any such vehicle . . . when so seized, held and possessed under a bailment lease or contract, and the legal title thereto is in another person who shall prove that the unlawful use for which the same was seized was without his knowledge or consent, then the claim of the bailor for money due under said bailment lease or contract shall attach to and be paid out of the funds derived from said sale after payment of costs," should be so liberally construed by the court as to include certain creditors, such as the holders of chattel mortgages, conditional sales contract, etc., and urges that a distinction should be made between the rights of the Commonwealth to whom the law forfeited the automobile in question and *bona fide* creditors or purchasers.

In support of this contention, the case of Com. v. One Columbia Automobile, 5 D. & C. 193, is cited; also, Com. v. One Ford Truck, 5 D. & C. 234, in which Judge Ferguson (page 235) said: "We see in the statute no intention to affect the law of bailments. We see in it only an effort to prevent the use of vehicles unlawfully."

Judge Brownson, in Com. v. One Columbia Automobile, 5 D. & C. 193, holds that a conditional sale contract similar to the one in question in the case at bar is a "bailment contract." The conditional sale contract in question, as we construe it and as we understand the law, is not and cannot be construed as a bailment contract or lease. It does not provide for or even contemplate a return of the automobile to the vendor or its delivery to any one else. It does not possess the elements of a bailment.

"A bailment, from the French bailler, to deliver, is a delivery of goods in trust upon a contract, express or implied, that the trust shall be faithfully executed on the part of the bailee:" 2 Blackstone, 451.

There is no contention in this case that the automobile in question was delivered to Thornton Maddox "in trust," or for a definite purpose or time, at the completion of which it was to be by him returned to the bailor or any other person.

Claimant's counsel also cites Com. v. One Ford Truck, 85 Pa. Superior Ct. 188; also, Com. v. One Chevrolet Coupé, 85 Pa. Superior Ct. 182. Neither of these cases support claimant's contention as we interpret them.

As we interpret the Enforcement Act in question, an automobile used in the illegal transportation of intoxicating liquors is forfeited to the Commonwealth, and the only restrictions or conditions attached to such forfeiture are those provided by the act. The condition now in question is the rights as against the proceeds of the same when the automobile "so seized, held and possessed under a bailment lease or contract and the legal title thereto is in another person, etc."

If the saving clauses in the act are to be broadened so as to include the wrongdoer's general creditors or other claimants than those provided for in the act as it is now written, it should be done by a legislative amendment and

not by judicial interpretation, which, to accomplish such result, must amount to legislation.

If our interpretation of the conditional sales contract, the note and the guarantee thereon, is correct, i. e., that the same constitutes a conditional sale and not a bailment lease or contract, then the Oldsmobile automobile condemned in this case "is not held and possessed under a bailment lease or contract, and the legal title thereto is not in another person," and, therefore, the claimant in this case does not come within the protection of the act and is entitled to no part of the proceeds of the sale of the condemned and forfeited vehicle.

We have carefully studied the opinion in Com. v. Mathis, 5 D. & C. 191, where the act was construed to protect the holder of a chattel mortgage on the condemned automobile, and we have also carefully studied the opinion in Com. v. One Columbia Automobile, 5 D. & C. 193, where the interpretation placed upon the act, if carried to its logical conclusion, would protect all creditors of the wrongdoer save only as against other creditors or bona fide. purchasers, but we are not convinced of the correctness of those decisions, and, therefore, cannot follow them.

In passing the act in question, the legislature apparently took into consideration that a vast amount of credit business is done in this state by bailment contracts or leases. They are so firmly established in our law that any legislation invalidating them would work great hardship upon people who have honestly parted with the possession of their property on a contract lease or bailment, and, therefore, [the legislature] inserted in section 11 (B), (III), a provision accurately and technically designating such class of persons to be protected in the following words: "In the event that any such vehicle, team, conveyance or craft is, when so seized, held and possessed under a bailment lease or contract, and the legal title thereto is in another person," when such unlawful use was without such person's knowledge or consent.

When claimant in this case placed the automobile in question in the hands of Maddox upon the conditional sale contract and the note securing the purchase money therefor, it knew that the vehicle was liable to be forfeited and condemned if used by Maddox in the illegal transportation of intoxicating liquors, and it took its chances thereon. It sought to relieve itself from the responsibilities of ownership and at the same time to retain the benefits thereof, but failed because it made a sale of the automobile to Maddox instead of leasing the same to him and retaining the legal title in itself. The conditional sale contract in the case at bar does not contemplate nor does it make any provision for a return of the automobile· to the alleged owner. In the event of the happening of the contingencies provided in the contract, whereby the vendor might retake possession and sell the same, the proceeds over and above the unpaid purchase money still belonged to the vendee.

Our courts have recognized the vast business done throughout the state on bailment leases, and the act in question by the above provision protects them, but, as we interpret the same, does not protect other creditors or claimants not specifically provided for in the act itself. That the vast amount of business done in this state on bailment leases is recognized by our courts is shown by the following utterance of Mr. Justice Kephart in Leitch v. Sanford Motor Truck Co., 279 Pa. 160, 165: "If we were to sustain appellant's contention, it would seriously interfere with the vast business done throughout the state on bailment leases, and property thus held would be at the peril of the bailors. Our decisions, however, follow a different course, protecting the owner's title as long as he does not knowingly permit the public to be misled."

Commonwealth *v.* One Oldsmobile Automobile.

In Com. *v.* One Chevrolet Coupé, 85 Pa. Superior Ct. 182, 185, Gawthrop, J., referring to the Enforcement Act of 1923, said: "The expressed purpose of the legislature was to protect innocent persons rather than to punish them. Only the wrongdoer is to be penalized by the forfeiture of his property if it is used in the illegal transportation of intoxicating liquors."

These authorities and others that might be cited show beyond controversy that it is the purpose of the act and also of the courts to protect the class of persons provided for in the act, and if, by reasonable construction of the act, it could be broadened to protect the creditors of the wrongdoer instead of protecting the innocent owner of the property in the hands of the wrongdoer, as was held in Com. *v.* Mathis, 5 D. & C. 191, and in Com. *v.* One Columbia Automobile, 5 D. & C. 193, we would be pleased to so interpret it, but from our study of the act and the decisions, we cannot so do without substituting judicial interpretation for legislation.

And now, to wit, Feb. 23, 1926, after hearing and due consideration, the court finds as a fact that the one Oldsmobile automobile, manufacturer's No. 7387, motor No. B 10927, described in the petition of the district attorney, was used by one Thornton Maddox for the unlawful transportation of intoxicating liquors within the County of Bradford and State of Pennsylvania, in violation of the provisions of the Act of Assembly approved March 27, 1923, P. L. 34; the court does hereby adjudge the said automobile forfeited and condemned, and the same is hereby condemned and forfeited to the Commonwealth in accordance with the provisions of said act of assembly; and it is further ordered and decreed that the Sheriff of Bradford County shall expose the said automobile to public sale, after notice as provided in the act of assembly aforesaid, and to make public sale thereof and pay the proceeds of such sale to the County Treasurer of Bradford County, Pennsylvania, as provided by said act. The claim presented by the Merchants Acceptance Corporation is hereby refused, disallowed and dismissed.

From Rodney A. Mercur, Towanda, Pa.

NOTE.—See Com. *v.* One Studebaker Coupe, 86 Pa. Superior Ct. 532